No. 2354.

## W. R. GEORGE v. THE STATE.

1. PRACTICE—STATEMENT OF FACTS.—A statement of facts, to be sufficient, must be approved by the trial judge and filed in the trial court either in term time, or, under an order of court, duly entered, within ten days after the adjournment of the court. This rule, however, has been so far qualified as that when the statement of facts is filed after the times specified, and the appellant shows to the satisfaction of this court that he has used due diligence to secure the approval of the trial judge and the filing of the same within the period prescribed, and that his failure was not the fault of himself or his attorney, but was the result of causes beyond his control, the said statement will be received as a part of the record in the cause, and will be considered on appeal. See the original opinion and the opinion on rehearing for circumstances *held* not to bring the statement of facts tendered in this case within this rule.

2. SAME—BILLS OF EXCEPTION.—A party objecting to any ruling of the trial court should except to the same at the time, and, if he asks it, time should be given him in which to embody his exception in a written bill. Refusal to grant such time, if prejudicial to the party, would be reversible error. But, to bring before this court the refusal of the trial court to grant time for the preparation of the bill, exception to such action should be promptly taken, and if the court refuses the bill, the party should appeal to the bystanders. Note that in this case this rule was not observed.

APPEAL from the District Court of Limestone. Tried below before the Hon. S. R. Frost.

The indictment charged the appellant with the murder of Peter Milstead, in Limestone county, Texas, on the seventh day of September, 1874. This trial, which was had at the November term, 1887, of the district court of Limestone county, resulted in the conviction of the appellant for manslaughter, and the assessment against him of a term of three years in the penitentiary as punishment.

The authentication of the statement of facts and the bills of exception presented by the appellant on this appeal constitutes the only question determined in the opinions, which reject both. As covering many questions that may arise under the statutes regulating the practice pertaining to statements of facts and bills of exceptions, the able and exhaustive briefs for both the

appellant and the State are inserted. It will be noted that the
brief for the appellant which follows is that filed in support of
the motion for rehearing, while that for the State is the one filed
on the main case.

*Kimbell & Kimbell* and *Herring & Kelley*, for the appellant:
It is apparent from the affidavits filed herein that in open court,.
and on the day of the adjournment of the term, appellant's
counsel agreed and submitted to the trial judge as their state-
ment of facts the evidence as taken by him on the trial, and
that the district attorney refused to agree to the same. There-
upon it became the duty of the district attorney immediately to
make out the statement of facts and submit the same to the
court, and the duty of the court to make his statement from the
two, certify and file the same, and his failure so to do until after
the ten days allowed from adjournment can not be imputed as
laches to appellant.

J. B. Kimbell says: "Defendant's counsel requested the court
not to adjourn the court for the term till a statement of facts
could be made up and authenticated; and then and there pro-
posed to the court and to the district attorney to adopt the
judge's notes of the testimony as a statement of facts, they be-
ing admitted by all to be full and correct, and the judge telling
the clerk how to read them, explaining the meaning of the
characters representing deceased and defendant. This was im-
mediately after the ruling on defendant's motion for new trial
The term of the court would not have expired by limitation till
the next day (Saturday). The district attorney would not agree
to the judge's notes, though admitting them to be correct; and
the judge, at the suggestion of the district attorney and on his
own motion, made an order of record granting ten days in
which to make up and file a statement of facts, and then ad-
journed the court to the next regular term.     *     *     *     That
defendant's counsel did not desire any time more than the term
of the court to make out the statement, and the district attorney
refused to adopt the judge's notes, which the judge had said he
would approve if agreed on."

James Kimbell says: "That as soon as the motion for new trial
was overruled, he requested the district attorney to agree with
him on a statement of facts. That the district attorney was in
a fidget to get off home, and replied: 'I won't have time; you
take your order for ten days.' Affiant then told the district at-

torney in open court to 'let's settle the statement of facts, and not put off agreeing upon a statement of facts and leave for home without settling the same,' and was again told by the district attorney that he would not do so. Affiant then, in open court, proposed to the district attorney, in presence of his honor, to adopt the judge's notes as a statement of facts, said notes being then and there present, and the judge said he thought that would be as good a statement as they could get up; but the district attorney refused to do so. Affiant and the district judge, several days before this, had looked at the notes, and both thought they would be a good statement of facts in case the motion was overruled; and the judge had explained to the clerk the meaning of certain characters used in said notes representing defendant and deceased, in presence of affiant."

J. W. Stephens, in an affidavit filed herein February 25, 1888, says that he remembers very distinctly that, a short time before the motion for new trial was overruled in the case of The State of Texas v. W. R. George, charged with the offense of murder, and before the adjournment of the October term of the district court of said county, he saw James Kimbell, Esq., one of the attorneys for defendant George, and Judge S. R. Frost, together in the court room, and heard said Kimbell talking to said Frost about the judge's notes, being notes that the trial judge had taken down during the trial of said cause. Said conversation was in regard to using said notes as a statement of facts in said cause, in which said Kimbell and said Frost agreed that a statement of facts would be sufficient so made up. That Judge Frost or said Kimbell asked him if he could read the notes, and he replied: "I can read the judge's handwriting without any trouble." The judge then explained to him the meaning of two characters in said notes; one, he said, stood for the deceased, and the other for the defendant. He then told them that he could read and copy the notes easily. He can not recollect the exact language of either party, but his understanding then was as it now is, that the judge's notes were to be copied by him in the transcript as a statement of facts, and that he understood that both Kimbell and said Frost, judge, seemed to think that said notes were full and fair, and would be a good statement of the facts and evidence.

The only other affidavits having any bearing at all on this proposition are those of the trial judge and district attorney, filed herein January 4, 1888; and neither one denies the fact es-

tablished by the three preceding affidavits—that appellant's counsel proposed in open court, on the very day his motion for new trial was overruled, to adopt as their statement of facts the evidence as taken down by the court on the trial, and that the district attorney refused to agree to the same. How easily, and fairly, and justly could the court at that time, the parties having failed to agree, have adopted and certified to his own notes of the evidence, and caused the same to be filed as the statement of facts, instead of doing the self same thing on December 12, 1887. It is true that both he and the district attorney, as shown in their affidavits, did not intend that appellant should be prejudiced by the delay, and acted upon a custom in that judicial district—more honored in its breach than observance—that where, from any cause, a statement of facts or bills of exception could not be arranged during the term or within the ten days after the expiration of the term, by agreement to have the same filed as within the time required by law. This rule has been heretofore generally and freely acted upon by all the counsel of the district. Appellant supposed and intended this should be done in this case.

If mistaken in the proposition that it was the duty of the court, when appellant's counsel adopted and submitted to him his notes of the evidence as their statement, and the district attorney refused to agree thereto, immediately to make out his statement, and certainly within ten days from the adjournment to make and certify and file a statement, either before the court adjourned (and it appears that there was ample time), or within the ten days allowed, then we say that in the absence of any diligence whatever on the part of appellant, he should not be deprived of his rights because the court and district attorney, intending that he should not be, acted upon a custom or "rule" which the law does not recognize or tolerate. If there was any laches on the part of appellant or his attorneys (which is not admitted), is there not also, under all the facts and circumstances, contributory negligence on the part of the State, and should the State be allowed to take advantage of its own wrong to the deprivation of the liberty and rights of a citizen? (Rev. Stats., arts. 1377, 1378; Babb v. The State, 8 Texas Ct. App., 173; Ruston v. The State, 15 Texas Ct. App., 337, 378; Johnson v. The State, 16 Texas Ct. App., 372-3; Trammell v. The State, 1 Texas Ct. App., 121.)

In Ruston v. The State, 15 Texas Court of Appeals, 378, White,

presiding judge, says: "There being no statement on the part of the county attorney, the judge should have treated the defendant's as a disagreed statement, and should have received it and, from it and his own knowledge, have made out a correct statement, in case he could not approve it as correct. Defendant has been deprived of a most important legal right; for which the judgment is reversed and the cause remanded."

The failure to have the statement of facts filed in term, or within ten days thereafter, was not the fault or laches of appellant or his attorneys.  J. B. Kimbell says: "The judge and the district attorney both told defendant's counsel to prepare and send statement of facts up to them at Corsicana.  *  *  *  Within five days from the adjournment of court, defendant's counsel prepared and mailed to the judge what they believed to be a true and correct statement of facts, taken from the judge's notes, and at the same time wrote to the judge and the district attorney and asked the judge in said letter to submit them to the district attorney, and let them hear from them as soon as practicable. Said letters and mail matter would reach Corsicana in about two hours.  In about a week counsel received a letter from the judge acknowledging the receipt of statement of facts and notes, and stating that he and the district attorney had both been off on a visit and that he had just returned, and the district attorney had not returned, but would be at home that day, and that counsel had better come up and see the district attorney and agree or disagree on statement." And then he shows that he went on the first train to Corsicana and found the judge preparing to leave the city and the district attorney absent. He then went in search of him. Found him at Mexia. Presented to him the statement and the judge's notes. He refused to examine the same; said he didn't have time; had to go to Corsicana. Affiant offered to accompany him if he would act upon the statement there. He refused, and referred affiant to Messrs. Burrow & Kincaid. Affiant told him he was satisfied they would not act, and he asked the district attorney for a letter to them requesting them to do so. He refused to write the letter. Was informed by affiant that defendant's counsel had submitted their statement to Burrow & Kincaid the day it was prepared, and that they had refused to have anything to do with it. Affiant returned home and informed Messrs. Burrow & Kincaid as to the request of the district attorney, and they positively refused to have anything to do with the matter. He then sent

the statement and notes to the judge with a letter to him, fully
explaining the facts. He also wrote to the district attorney.
But at the time of making his affidavit, some nine or ten days
after, he had not heard a word from either of them.

James Kimbell, in his affidavit, in addition to what is above
stated therefrom, shows that the statement was made in about
five days from the adjournment of the court, and was immedi-
ately presented to Kincaid, of Burrow & Kincaid, at their office,
with the judge's notes, for their action, and Mr. Kincaid said:
"County court is coming on us now, and we just can't do it.
You will have to send them to the district attorney. We don't
want the responsibility of it." And in less than an hour he
says he mailed the statement and notes to the judge and caused
letters to be written by the same mail to him and the district at-
torney. And he corroborates J. B. Kimbell as to Burrow & Kin-
caid refusing to act, and as to re-mailing statement, notes with
letters to the judge, and not being able to hear from him up to
the time of making his affidavit. He also shows that he applied
to Mr. Kincaid for his affidavit as to the diligence of appellant's
counsel, and he replied "that it was not necessary, as affiant's
affidavit would not be controverted; that it is true you all tried
to get us to agree with you;" but he declined to make the affi-
davit.

Affidavit of I. C. Hutz shows that he assisted in making the
statement of facts, and that the same was sent in due course of
mail, with Judge Frost's notes of the evidence, to him in ample
time to have been examined by the judge and district attorney
and filed within ten days after the adjournment of the court.

Affidavit of J. W. Stephens shows diligence, corroborating J.
B. Kimbell in part as to his visit to Judge Frost and to the dis-
trict attorney, trying to obtain statement, and that the judge
said he had not been at home but about two days since court ad-
journed, and that he was going to leave Corsicana on the next
train going west. See also his second affidavit filed here Febru-
ary 25, 1888.

Contra, and not in conflict with the main facts of continuous
effort and diligence on the part of appellant's counsel, to pro-
cure and file, first, during term, and second, within the ten days
allowed for the convenience of the court and district attorney, all
their affidavits. The former is not sure that he can detail all the
circumstances attending the cause of the delay in filing a state-
ment of facts. He has "taken full notes of the testimony,

nearly a *verbatim* report of the testimony of the witnesses, and furnished the same to counsel." To this extent he corroborates the Messrs. Kimbell and the clerk, Stephens. But, in the very next sentence, he is at variance with these three witnesses; for he says: "I heard no more of the statement of facts until on the twenty-eighth of November. On that date, or about that date, I received from Messrs. Kimbell & Kimbell, by mail, a written statement called by them a statement of facts." Their letter accompanied the same, but the statement was not signed by them, and he did not conceive it to be any part of his duty to secure signatures of the State's and defendant's attorneys to the statement of facts. He, therefore, returned it to them and advised them to see Mr. Hardy, and endeavor to agree on a statement. The court adjourned on the eighteenth of November. The great preponderance of the evidence is that appellant's counsel submitted to the court his own notes, as their statement, and that the district attorney did not agree thereto and left without submitting any statement. The great preponderance of evidence further shows that appellant's counsel mailed statement to the court, and wrote letters to him and the district attorney to Corsicana, where they lived, on the twenty-third day of November. Now, on the twenty-eighth of November, the day on which the ten days expired, the court declines to act and returns the statement, because not signed by counsel although their letter accompanied the same; and said statement was finally adopted by him, or was the only one in connection with his notes, upon which it was based, to aid him, inasmuch as the district attorney and his associate counsel failed, first, last and all the time, to agree to or furnish any statement; and the court had finally to certify thereto, upon disagreement of counsel, as it was certainly his duty to have done, in term or before the expiration of the ten days. In justice to the court, however, we quote from his affidavit the following, speaking of the bills of exception and statement of facts, he says: "As is the usual practice, the clerk could place his file mark, as of date within the term. The clerk said he would so file them. * * * In order that the State should not have any technical advantage of the defendant, the clerk would file them as of date during the term." The trial judge admits in his affidavit "that the defendant's attorneys forwarded the notes of testimony mentioned, and the statement prepared by them, which, as before stated, were returned to them about two days before the papers reached me. The package

came to the postoffice about the twenty-sixth of November, I suppose."

The district attorney says that the statement of facts in the above entitled cause was never presented to him until the afternoon of November 30, 1887, when the same was presented to him by James Kimbell. In this he corroborates both Kimbell and Stephens. But he does not deny that appellant's attorneys on the day court adjourned offered the judge's notes of the evidence adduced on the trial as their statement, and that he declined to agree thereto.

All that the court and district attorney say in their affidavits about the latter visiting his family in Fairfield, and his custom of spending part of his time there, and about telephonic communication between that place and Groesbeck, should not be considered, because there is no evidence that appellant or his attorneys had any such knowledge; and there is evidence that he left on the day, and before the court adjourned, on the train for Corsicana, and that the agreement was that the papers should be sent to that place; and further, that the district attorney was not in Corsicana for ten days after the adjournment; that the trial judge was there only about two of said days; and they fail to show that they informed appellant's counsel of their absence from their home or whereabouts; while it is shown that appellant's attorneys acted upon the belief that they were in Corsicana. (Art. 1379a, 20 Leg., 1887, page 27; see also authorities under last proposition.)

Article 1379a certainly was enacted for just such a case as is here now presented, and contemplates and provides for the filing of affidavits ex parte and *dehors* the record.

It was the duty of the court to approve, sign and file with the clerk during the term the bills of exception presented to him by appellant's counsel, or to make out and sign and file such bills of exception as in his opinion presented the ruling of the court in that behalf, as it actually occurred. Pending the trial quite a number of exceptions to the rulings of the court were taken by appellant's counsel. There is no controversy, but it is conceded on all hands that the bills were made out and given to the court in less than ten days after the trial. It is also admitted by the court, under oath, that he delivered them to the district attorney, who retained possession of them until the day the court adjourned. It does not appear that the court or district attorney examined them at all during the term, or that the former sug-

gested any corrections to appellant's attorneys at any time, or gave them an opportunity to agree with him if he had any objections. It does appear, however, that the court returned a part of them to the clerk on the twelfth day of December, 1887, signed by him and others mentioned by him as refused, but are not in the record, nor any substitute made by him therefor. It is too plain for argument that appellant's counsel complied with the law in presenting these bills of exception to the court, and that by his mistake, or neglect of duty under the law, appellant has been deprived of them. It is therefore submitted that for this error alone this motion should be granted and the case reversed and remanded. (Rev. Stats., arts. 1363, 1364, 1365, 1366.)

A careful inspection of the record shows that the ends of justice have not been attained in this case, and that without his fault the appellant has been deprived of his legal and constitutional rights. It is not deemed necessary, nor is it believed that the law requires, that appellant, in order to have his motion granted, is bound to show that, if the rejected statements and bills of exception were considered, a meritorious appeal would be disclosed and a reversal had. If such, however, were required, it is certainly not necessary to make the discarded papers a part of the motion for rehearing when they constitute a part of the record, and an inspection thereof by the court will show their value in support of appellant's rights on this appeal. And while it is confidently submitted that a consideration of the statement and exceptions would change the results, still back of this are questions and issues which, if resolved in favor of appellant, entitles him to a reversal of the judgment of affirmance. Has he had the benefit of his appeal? Certainly not. Then why not? Has this constitutional right been lost by his own fault or laches? Ignoring the statement and exceptions, is there or not some fundamental error of record? It may be that these questions and issues have already been sufficiently presented. But on account of the principle involved and the importance to appellant of a correct decision, his counsel ask to be further heard briefly on the plea of laches. In this connection it may be well to point out some errors of both law and fact in brief of the State which may have been relied on by the court in affirming the judgment.

The first proposition is untenable, because appellant's counsel had no lawful means of compelling the trial judge to grant or return with his objections to them their bills of exception, and

on the last day of court he promised to examine, sign and have them filed with file mark in term. The counsel for appellant had prepared the bills and given them to the court within the time required, and before they could call on bystanders the court had some statutory duties to perform which, without any intention of prejudicing the rights of appellant, he neglected. Admitting that his counsel "consented to the adjournment of court without the filing of the bills with the understanding that they were to be approved and marked filed by the clerk as if in term time," was not the court a party to the agreement? Was it not made for his convenience? Did he not neglect his plain duty in making it? When the district attorney failed for weeks to examine the bills on account of his press of business on the criminal docket, and took his departure on the day of and before adjournment, leaving them on his table at his hotel, was it not then the duty of the court to pass upon and approve, sign and file them, or to suggest his objections, and counsel for appellant failing to agree thereto, then and there to have made out and filed his own bills? And shall the rights of a party be ignored, on appeal, wherein his liberty is involved by such agreement and neglect of duty? Can counsel and the court make such agreement and thereby set at naught the plain letter of the statute and virtually deprive a defendant of his right of appeal?

Second proposition of said brief and authorities cited are not applicable to the facts of this case. The trial judge did not refuse time for the preparation of appellant's bills; nor did he refuse to approve and sign them. By a customary but unlawful agreement he did sign them and order them filed as in term, on the twelfth of December, when his court adjourned eighteenth of November, 1887. Can this court tolerate such custom and practice at the sacrifice of legal rights?

The third proposition and statement thereunder of said brief has been sufficiently considered, except as to some further inaccuracies in the statement. The affidavits, without anything to the contrary, show that appellant's counsel did try to communicate with the district attorney; that they forwarded a letter to him by mail to Corsicana (his home) about five days after the court adjourned, and at the same time they sent statement of facts and letter to Judge Frost, all of which failed to reach those officers, because they were absent. It is further erroneously stated that appellant's counsel, prior to thirtieth of November, did not attempt to agree with assistant counsel for the State,

though they resided in same town. Now, this looks like negli-gence *per se.* But the record fails to show one single, solitary word in support of it. On the contrary, as hereinbefore shown, the affidavits of two or three witnesses positively show not only the attempt, but the flat refusal of said assistant counsel to as-sume the responsibility, or to have anything to do in agreeing or disagreeing to the statement of facts. The affidavits, uncontra-dicted, further establish the fact that there had been an effort on the part of appellant's counsel to get a statement prior to the thirtieth of November, and to agree with the district attorney thereon prior to said date, to wit: on the day the court ad-journed.

We submit, in conclusion, with the utmost confidence, that the ends of justice have not been attained in this case; that without fault or laches appellant has been deprived of his right of appeal; that his counsel did all in their power, both before and after adjournment, to properly perfect his appeal, so as to give him the full benefit, in this court, of the errors reserved and assigned; and that the due administration of justice de-mands that no snare or net, unwittingly and unintentionally set, should entangle a party charged with crime, and deprive him of his legal and constitutional right of appeal.

*W. L. Davidson,* Assistant Attorney General, and *Burrow & Kincaid,* for the State: Appellant's statement of the nature and result of the suit is correct. He files forty assignments of error, but in his brief he waives, or, at least, fails to present, any except those with reference to his failure to get bills of ex-ception and a statement of facts. It occurs to counsel for the State that the question to be decided is, does the appellant show himself to be prejudiced on account of his failure to get his bills of exception and statement of facts filed in proper time? and we therefore present the case from that standpoint, and submit the following propositions for the affirmation of the judgment:

1. In case a party fails to get a satisfactory bill of exception during the term of the court at which the cause was tried, it is his duty to get one from the bystanders at the trial, and having failed to demand or request time to prepare a bill setting forth the matter complained of at the *time* of its occurrence, and hav-ing failed during the entire term of the court thereafter to resort to the statutory mode for perpetuating the matter, he thereby waives it. (Rev. Stats., arts. 1358, 1367.)

Argument for the State.

The affidavits filed on behalf of appellant simply show that after the trial he prepared and submitted to the court a number of bills of exception, and that the court failed to approve and file them during the term. The affidavit of the learned trial judge, filed in the cause, shows that appellant's counsel consented to the adjournment of court without the filing of the bills, with the understanding that they were to be approved and marked filed by the clerk as of in term time. The affidavits for appellant show that his counsel were trying to get the bills after the adjournment. The file mark of the clerk shows that they were actually filed under this arrangement.

On this point we would suggest that it is the duty of the appellant to bring the matters complained of to this court by the proper legal methods. It is certainly not the duty of this court to go *dehors* the record and inquire whether injury has been done him or not, more especially when the failure to present the facts is due to his own negligence. (Rainey v. The State, 20 Texas Ct. App., 484; Crist v. The State, 21 Texas Ct. App., 362.)

2. The refusal of a bill of exceptions by the trial court will not reverse a cause unless it is made to appear to this court: 1, that the matter complained of was a proper subject for a bill of exceptions; 2, what the bill to which the defendant claimed he was entitled was; 3, that the failure to get the bill in some way operated to his prejudice, and the mere fact that appellant failed to get a bill of exceptions can not reverse the case, unless he makes it appear to this court that the point complained of by the bill tendered and refused would, if properly presented, have changed the result on appeal. (Kennedy v. The State, 19 Texas Ct. App., 618; Rosborough v. The State, 21 Texas Ct. App., 672; Powers v. The State, 23 Texas Ct. App., 42; Belo & Company v. Wren, 63 Texas, 728; Ratto & Company v. Levy, 63 Texas, 280.)

3. A statement of facts filed after the time prescribed in articles 1377, 1378 and 1379, Revised Statutes, can not be considered unless the party filing it shall show to this court that he has used due diligence to obtain the approval and signature of the judge thereto, and that his failure to file the same within the time required is not due to the laches of said party or his attorney, and that such failure was due to causes beyond his control. (Acts of the Twentieth Legislature, chap. 24, page 17.)

The affidavits of the district attorney and the trial judge show that there was no attempt made to get an agreed statement of facts until the thirtieth of November, 1887. The trial occurred on

the thirty-first of October, 1887. Court adjourned on the eigh-
teenth November, 1887. There was no statement of facts made
out before the adjournment, by appellant or his counsel. They
wanted the district attorney to agree to have the judge's trial
notes adopted. The district attorney was at Fairfield during
the entire ten days after adjournment, where he always spent
his vacations between the Limestone and Navarro terms.
There was telephonic communication between the two places.
Defendant's counsel had never attempted to communicate with
him on the subject. They could have ascertained his where-
abouts by the slightest diligence. They did not, prior to said thir-
tieth of November, attempt to agree with assistant counsel for
the State, though they resided in the same town with appellant's
counsel. There was no statement of facts presented to the
judge until on the twenty-eighth of November, 1887, the tenth day
after adjournment, when defendant's counsel presented him
with an unsigned statement, requesting him to get the district
attorney to sign it. There had been no effort on the part of ap-
pellant to get a statement of facts prior to this time. They did
not attempt to agree with the district attorney until the thirtieth
this month. We call attention to the cases of Albright v.
Corley, 40 Texas, 105, Rainey v. The State, 20 Texas Court of
Appeals, 484; and Crist v. The State, 21 Texas Court of Appeals,
362, on this point.

The unsigned statement presented to the judge could not have
been acted upon by him as an agreed statement of facts (Blaw
v. Heirs of De la Garza, 42 Texas, 232), and his approval would
not have authenticated it. (Renn v. Samos, 42 Texas, 104.)
The judge is not required to make up and file a statement of
facts until the parties have failed to agree. (Rev. Stats., art.
1378.) It is only on the presumption that the parties have failed
to agree that a statement approved by the judge, and not affirm-
atively showing a disagreement, can be sustained. (Kelso v.
Townsend, 13 Texas, 140; Darcy v. Turner, 46 Texas, 30; Mc-
Manus v. Wallis, 52 Texas, 534.) Hence it results that a state-
ment made up and filed by the judge when the parties had not
in fact failed to agree, would be invalid.

HURT, JUDGE. This is a conviction for manslaughter, with
the punishment fixed at three years confinement in the peniten-
tiary.

Appellant was tried on the thirty-first day of October, 1887.

The court adjourned on the eighteenth of November, 1887. Counsel for appellant presented to the district attorney, for his approval, a statement of facts, on the thirtieth day of November, 1887, twelve days after the adjournment of the court. The statement of facts was received by the district clerk on the twelfth day of December, 1887, and was filed as of November 27, 1887. There was no order allowing the statement to be filed after adjournment. The law requires that the statement of facts be filed in term time, or under an order for the purpose, within ten days after adjournment of the court. But if not filed within the term, or within ten days (an order having been entered for that purpose) after adjournment, still, by virtue of article 1379a (act of March 8, 1887), when a statement of facts is filed after these times, and the party tendering or filing the same shall, to the satisfaction of this court, show that he has used due diligence to obtain the approval and signature of the judge thereto, and to file the same within the time prescribed, to wit, in term time, or within ten days after adjournment, and that his failure to file the same in said time is not due to the fault or laches of said party or his attorney, and that such failure was the result of causes beyond his control, this court shall permit said statement of facts to remain as part of the record, and consider the same, etc. (Approved March 8, 1887.)

Now, it can hardly be contended that appellant or his counsel has complied with the provisions of this article. Instead of showing due diligence, laches clearly appears. Failing to use proper diligence to obtain the approval and signature of the judge to the statement of facts, and it having been filed after adjournment, without an order for that purpose, this court can not lawfully consider this statement of facts; and hence the errors assigned must be considered as if no statement of facts appeared in the record.

Appellant complains that, without fault on his part, he has been deprived of his bills of exceptions. If a party be dissatisfied with any ruling or action of the court upon the trial, he may except thereto at the time the same is made, and at his request he shall be given time to embody such exceptions in a written bill. Refusal by the court to grant such time is error, but such error must appear to have prejudiced some right of the party to constitute it reversible error; and for the party to have such error revised by this court, he must at the the time reserve his bill to the action of the court in refusing him time to prepare

his exceptions to the supposed erroneous ruling, action or opinion. If this bill is not allowed by the court, then he must appeal to the bystanders.

Quite a number of bills of exceptions appear in this record; none, however, were reserved at the time or within term time, all being filed after the court adjourned. We can not, under the circumstances, consider these bills, and the errors assigned must be considered without them.

This record is before us, therefore, without bills of exceptions or statement of facts, and we are to look alone to the sufficiency of the indictment and the charge of the court, testing the charge by the allegations of the indictment, and assuming that there was evidence calling for every theory of the case presented by the charge. The indictment is sufficient, and, without a statement of facts, the charge is not obnoxious to any radical error.

The judgment must be affirmed.

*Affirmed.*

Opinion delivered February 15, 1888.

[After the rendition of the foregoing opinion, the counsel for appellant filed an application for a rehearing, based upon grounds which are substantially disclosed in the opinion which follows.— REPORTER.]

## OPINION ON MOTION FOR REHEARING.

HURT, JUDGE. We were mistaken in the first opinion in this case in stating that there was no order for filing the statement of facts after the adjournment of the court. This mistake was immaterial, because the statement was not filed within ten days.

In the brief, on the motion for rehearing, counsel for appellant insists that there was error in the charge of the court relating to manslaughter, and that as the court charged upon this grade of the offense, it is to be presumed that the *evidence* required the charge. If courts never charged abstract law, the presumption claimed would be reasonable.

The judge's notes were tendered to the district attorney by counsel for appellant, as a correct statement of facts, which were refused. It was then the plain duty of counsel for appellant to prepare from the notes or any other source a statement of facts, present the same to the district attorney, and, if he failed to agree, then to present it to the judge, etc.

Again, no move toward obtaining a statement of facts was made until five days after the court adjourned, when counsel for appellant prepared, and sent by mail to the judge at Corsicana, a statement of facts. The statement being filed after the expiration of the ten days allowed, still it will be considered by this court if appellant has shown that he has used due diligence to have it approved and signed by the judge in proper time, and that his failure was the result of causes beyond his control. (Act of March 8, 1887.) This is the rule directly applicable to the state of case presented by this record. The statement was not filed within the ten days.

Has appellant shown such diligence as is required by this act? Let us suppose that counsel for appellant had prepared a statement by the second day after adjournment, and had gone in person to Corsicana to the judge with it, and then insisted upon his approval and signature. It is very probable that these efforts would have been successful; but if, after these endeavors, he had failed, he would then be in a better position to rely upon the act last cited. The plain, simple truth is that, instead of showing compliance with the statute upon this subject, the affidavits filed by appellant present a clear case of laches.

The motion for rehearing is overruled.

*Motion overruled.*