# NOVEMBER 22, 1933

JOHN S. ALLEN V. THE STATE.

No. 16100.  Delivered June 14, 1933.
State's Rehearing Granted October 25, 1933.
Appellant's Rehearing Granted November 22, 1933.
Reported in 65 S. W. (2d) 311.

The opinion states the case.

*Harvey P. Shead,* of Longview, for appellant.

*M. L. Molhusen,* Crim. Dist.. Atty., of Longview, *and Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for forty years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Roy King by shooting him with a gun.

Appellant was the tenant of deceased.  Prior to the homicide a controversy had arisen about some rent appellant owed deceased, and appellant had been ordered by deceased to surrender the premises..  According to appellant's version, he was unable to pay deceased what he owed him.  He testified that de-

ceased was persistent in his effort to collect the rent and had told him, in effect, that he was going to kill him if he did not pay him. He said deceased had taken his small boy's bicycle and held it for the rent he was due deceased. Again, appellant testified, as did his eleven years old son, that shortly before the homicide deceased destroyed a rabbit trap belonging to appellant's son and struck the boy several blows with a switch. Appellant said the whipping deceased gave his son raised two or three large welts on the boy's back. A day or two before the homicide appellant went to the district attorney, a justice of the peace, and other officers and tried to have deceased placed under a peace bond. The state's testimony was to the effect that appellant shot deceased while deceased was standing in his wagon, and that deceased was making no demonstration toward appellant at the time. Appellant testified that he armed himself and went to talk to deceased about whipping his boy. He said he had no intention of killing deceased, but carried a pistol for self-protection. Further, he said that when he asked deceased about the matter deceased cursed him and struck him with a club, knocking some buttons off of his shirt, and then reached down in his wagon as if to get a gun. He testified that he believed deceased was going to kill him, and fired for the purpose of protecting himself. He testified, further, that he did not fire a second shot because he did not want to kill deceased. Deceased was shot in the side. After receiving the wound he drove his team home, and then went to a neighbor's house and asked that he be taken to a hospital. He was carried to a hospital and operated on. He died the next day. It appears to have been uncontroverted that appellant's general reputation as a peaceable and law-abiding citizen was good.

After he had been wounded, deceased drove to his home and told his wife that appellant had shot him. After making this statement to his wife, he went with his wife to a neighbor's house and asked him to take him to the hospital. He told his neighbor that appellant had shot him. It took the neighbor 15 or 20 minutes to drive deceased to the hospital. On the way to the hospital, deceased again stated that appellant had shot him. Five minutes after being received in the hospital deceased was asked by the attending physician to tell him who shot him. He replied that appellant had shot him. The physician then asked deceased why appellant had shot him. He replied that he had asked appellant to get off of his place. At this point we quote the testimony of the physician as follows:

"He said that he had some trouble and he was trying to get him off and Mr. Allen (appellant) would not leave. He said he

went down to get some wood somewhere and was hauling wood and Mr. Allen met him on the way and said he had struck his child and he said 'No, I did not strike your child.' He said that they were down there moving the lumber, and he said that he told them to get away from there and leave it alone as it did not belong to them. He said that he had not struck either child, but he did tell them to get away from there and leave it alone. And that they argued a little and Mr. Allen shot him. He told me in that conversation that he himself was not armed at that time, he said that he did not have a gun. He said that he and Mr. Allen had fussed a little about the child. He said that he had not slapped the child. He said that while he was there hauling wood Mr. Allen accused him of striking the child. He said that he told him that he had not struck the child. Then he said that Mr. Allen shot him."

The state laid no predicate for introducing the foregoing statement as a dying declaration, but offered it as res gestae. Appellant brings forward two bills of exception, complaining of the action of the court, urging that the statement was not admissible under the rule of res gestae. We deem appellant's objection to have been well taken. As heretofore pointed out, the first person deceased talked to after the shooting was his wife. Leaving his wagon, he and his wife walked to a neighbor's house, where deceased stated to his neighbor that appellant had shot him. It took 15 or 20 minutes to carry deceased to the hospital. On the way to the hospital he again stated that appellant had shot him. Five minutes after getting to the hospital he was questioned by the attending physician, and made the statement we have quoted. So far as the record reflects the matter, the declaration made to the physician was made calmly, coolly, and collectedly. It was not shown to have been made under agitation or excitement, or without break. Some of the matters embraced in the statement relate to events preceding the homicide, and not immediately attending it, indicating that such statement was disconnected from the immediate transaction, and was a statement or relation of how it occurred. In other words, the statement itself shows that there was a break in the continuity of the transaction, and that the essential characteristic of instinctiveness was lacking. See Hendrix v. State, 289 S. W., 38, and authorities cited.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

LATTIMORE, JUDGE.—The state moves for rehearing. We have again gone carefully over the record. That it is in a condition of some confusion, is clear. The verdict was rendered January 27, 1933. The sentence, as shown on Minute Book G, is dated February 3, 1933, and it appears from the copy of same in this record that on said date and in connection with his being sentenced, appellant gave notice of appeal to this court, same being the only such notice appearing in the record.

The bills of exception in the case appear to have been filed on May 18, 1933, 104 days after the entry of the notice of appeal. Article 760, C. C. P., is definite in its requirement that in no case can bills of exception be considered when filed in the court below more than 90 days after the giving of notice of appeal.

It is above stated that this record exhibits confusion. From same it also appears that appellant's motion for new trial was overruled on February 28, 1933, but no notice of appeal appears to have been then given. We find also in the record a copy of an application for an extension of time in which to file statement of facts and bills of exception, which was filed April 17, 1933, and recites that notice of appeal was given March 28, 1933,—which date was more than three weeks after the adjournment of the term on March 4th. In this condition of the record we must reconsider what was said in our former opinion after considering appellant's bills of exception.

For the reasons above stated the state's motion for rehearing is granted, the judgment of reversal is set aside, and the judgment of the trial court will now be affirmed.

*Affirmed.*

### ON APPELLANT'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—Consideration of appellant's bills of exception on original submission caused a reversal of the judgment to be announced on June 14, 1933. Upon consideration of the state's motion for rehearing our attention was directed to confusion in the record regarding the dates of overruling the motion for new trial and notice of appeal which led us to believe the bills of exception had not been filed in time and could not be considered, which resulted in granting the state's motion and ordering an affirmance.

In the transcript on page ten the date of the sentence is February 3, 1933. Following the sentence and as a part of the same order there appears these words: "Defendant's motion

for new trial overruled, deft. excepts and gives notice of appeal to the Court of Criminal Appeals at Austin, Texas, and is allowed fifty days to file bills of exception and statement of facts."

On page fourteen of the transcript there is a formal order overruling the motion for new trial which is dated February 28, which would make it appear that appellant was sentenced twenty-five days before the motion for new trial was acted on. On April 15th the court granted a thirty day extension of time for filing bills of exception. If notice of appeal was given on February 28th and fifty days granted from that time to file bills, the order extending the time was effective and the bills of exception were filed in time and should be considered.

Since the state's motion for rehearing was granted and an affirmance ordered—*but while the appeal was still pending here* —appellant filed a motion in the lower court showing that the entries on the judge's trial docket show that the order overruling the motion for new trial, the sentence and the notice of appeal were all made on February 28th, and that in fact such is the correct date of such orders, and that the clerk of the court in carrying the orders into the court minutes made a mistake in the date as to when sentence was pronounced and notice of appeal given, and requested the court to enter a judgment nunc pro tunc correcting said date, which the court undertook to do, and the said order as attempted to be corrected as to date, together with the proceeding incident thereto is before this court. Under the provision of article 828, C. C. P., the effort to correct the record pending appeal in this court was abortive, as said article restricts action of the lower court pending appeal to substituting lost or destroyed records. The attention of the Legislature has many times been called to the injustice which might result from the restrictive language of the article in question. See Turner v. State, 16 Texas App., 319; Quarles v. State, 37 Texas Crim. Rep., 362, 39 S. W., 668; Acuff v. State, 98 Texas Crim. Rep., 71, 262 S. W., 761. In Davis v. State, 28 S. W. (2d) 794, this court again said: "Of the injustice that may result, the present record furnishes an illustration, and occasion is taken for again calling it to the attention of the Legislature."

The same may be said of the present record. Other cases are cited in note 3, under article 828, Vernon's Ann. Tex. Cr. St., C. C. P., vol. 3. We think appellant gains nothing by reason of the nunc pro tunc order as the court had no power to make it.

The situation here found is very like that in Davis v. State,

28 S. W. (2d) 794. We may look to the entire record to determine if appellant is not about to be deprived of the benefit of his bills of exception without any fault of himself or his attorney. The bills of exception were apparently—though not in fact—filed after the expiration of the time allowed by statute, and by force of article 828, C. C. P., preventing us from consideration of the nunc pro tunc order correcting the date, appellant will be deprived of a consideration of his bills unless it is shown to the satisfaction of this court that due diligence was used to secure their filing within the proper time, and that the apparent failure was without fault of appellant or his attorney. From the showing made in connection with his motion for rehearing and from the entire record we think appellant has brought himself within the rule in George v. State, 25 Texas App., 229, 8 S. W., 25, which rule was also invoked and given effect in Davis v. State, 28 S. W. (2d) 794.

Considering the bills of exception we are of opinion they present error harmful to accused as was pointed out in our original opinion delivered on June 14, 1933, reversing the judgment. So believing, appellant's motion for rehearing is granted, the judgment of affirmance is set aside and the judgment of the trial court is reversed and the cause remanded for the reasons appearing in the original judgment of reversal.

*Reversed and remanded.*