ROY CLIFTON FURRH V. STATE.

No. 30,513.  June 27, 1959.

*Fuller and Fuller*, Port Arthur, and *Baldwin & Goodwin*, Beaumont, for appellant.

*Ramie H. Griffin*, Criminal Distict Attorney, *Jim Vollers*, Assistant Criminal District Attorney, Beaumont, and *Leon Douglas*, State's Attorney, Austin, for the state.

DAVIDSON, Judge.

Appellant's motion for rehearing is granted. The former opinion is withdrawn and the following is now the opinion of the court:

Murder is the offense, with punishment assessed at life imprisonment in the penitentiary.

The deceased was the nineteen-year-old son of appellant. The killing occurred in the home of appellant in the presence of his wife, who was the mother of the deceased.

The state's case depends in a large measure upon the testi-

mony of Mr. and Mrs. Fred Brown, who lived next door and within six feet of the house occupied by appellant and his wife.

Shortly after midnight on the date of the killing, Mrs. Brown was awakened by the wife of appellant coming to the Browns' bedroom window and screaming "Call the police, Roy is killing Ronal [the deceased]." Mrs. Brown immediately notified the police, at which time the appellant, too, came to the Brown home. His wife then accompanied him back to their house, and Mrs. Brown heard appellant's wife say to him: "Why did you have to kill him. I know he is dead, I know he is dead."

Those statements appear to have been admissible as res gestae.

According to the testimony of the witness Brown, who had gone to the Furrh home, some time after Policeman Stokes and a fellow officer, Coheit, and the ambulance attendant arrived he (Brown) persuaded Mrs. Furrh to return with him to his home so she would not be present in her house when the body of her son was removed.

Prior to that time, Mrs. Furrh had conversed with the investigating officer, Stokes, upon her return to the scene of the homicide.

Upon the arrival of the witness Brown and Mrs. Furrh at the Brown home, the witness asked her in the presence of his wife: "What in the world happened?," upon which inqury Mrs. Furrh narrated the following facts to them:

"She told me * * * well, she actually said that they had— that Roy had—they had company earlier and after the company left that Roy missed this gun or pistol, and he asked about it, and she said she didn't know where it was, and he questioned Ronal and he said he didn't know where it was, and he said 'I am not going to argue about it, I am going to call the police or the F. B. I., and they will find it,' and he went to the phone like he was going to call, and Ronal came to him and said, 'Daddy, here is your pistol,' and he said 'I was going to protect mother with it,' and he said he took the gun and they went in the living room or they were in the living room when they [sic] gave it to him, and I believe she said he started cleaning the gun and they kept arguing back and forth and it wasn't too violent, and in a minute Ronal left the house, he just went out the front door and when he went out, he and *her* had a little

argument and he told her, he says, 'I ought to kill you,' and in a few seconds Ronal walked back in and said, 'Mama, did he threaten you?' and he said, "Hell, yes, and I ought to kill you too, —and he said, 'Why don't you,' and she said he just brought the gun up and fired it."

Mrs. Brown gave like testimony.

It is this testimony as to what appellant's wife said to Mr. Brown the second time she went to the Brown home which appellant claims to be inadmissible hearsay under the res gestae rule.

Officer Stokes testified that he and his partner, Coheit, answered a radio call to the address of appellant, the scene of the killing, and that the call was received at 12:30 o'clock, A.M., and that they arrived about four minutes later. Mrs. Furrh was on the porch steps at the time. She asked them: "Where is the ambulance?" The following conversation ensued between them:

"A. I asked what happened and she said, 'Roy just shot my son,' and I said, 'Who is Roy,' and she said, 'My husband,' and I said, 'Where is he,' and she said 'Right here,' and she stepped back on the porch and opened the door.

"Q. That's the front door of the house? A. The front screen door, and the wooden door was already open and the screen door was a slatted panel and you couldn't see through it, and she opened the door and I saw the body of the boy and his father standing about ten feet of the boy."

While time—that is, the time elapsing between the transaction or occurrence and the making of the statement—is often material in determining whether a statement made by a witness to a difficulty is res gestae authorizing proof thereof, yet such is not the sole test.

As has been pointed out in the prior decisions of this court, spontaneity is a controlling factor. Especially is this true in determining if the statement made is a narration of a past event as distinguished from a spontaneous expression whereby and through which the testimony is the transaction speaking rather than the witness testifying.

We have concluded that it is the rule just stated which takes

the statement of the wife of appellant to the witness Brown out of the rule of res gestae and makes it subject to appellant's objection as being inadmissible as hearsay evidence.

The conclusion reached finds support in the cases of Bradford v. State, 122 Texas Cr. Rep. 191, 54 S.W. 2d 516; Allen v. State, 124 Texas Cr. Rep. 642, 65 S.W. 2d 311; and Glover v. State, 126 Texas Cr. Rep. 56, 70 S.W. 2d 155.

For the error pointed out, the judgment is reversed and the cause is remanded.