## MOSE ROBBINS v. THE STATE.

### No. 2876. Decided April 15, 1914.

**1.—Murder—Murder in First Degree—Justifiable Homicide.**

Where the evidence was sufficient from the State's standpoint to show murder in the first degree, and from defendant's testimony murder in the second degree, and justifiable homicide, and the court submitted all these issues, there was no error on that ground. Davidson, Judge, dissenting.

**2.—Same—Indeterminate Sentence Law—Penalty.**

Upon trial of murder, the court being misled in believing that the indeterminate sentence law of April 3, 1913, was valid, failed to instruct the jury what penalty was authorized to be assessed for either murder in the second degree or manslaughter, which of course, was error. Following Ex parte Marshall, 72 Texas Crim. Rep., 83.

**3.—Same—Punishment—Statutes Construed—Procedure.**

Where, upon trial of murder, the offense was committed before the Act of April 3, 1913, amending our law on the subject of murder, articles 1140-1141, Penal Code, the case must be tried under the law as it existed at the time of the alleged crime. However, the punishment for murder in the first degree having thus been ameliorated, the new punishment must be submitted to the jury, unless defendant himself elect otherwise; however, he must be tried according to the new procedure law as amended by the Act of April 5, 1913.

**4.—Same—Argument of Counsel—Practice on Appeal.**

Where the judgment is reversed and the cause remanded for other reason, the argument of counsel need not be discussed in this instance.

**5.—Same—Evidence—Husband and Wife—Res Gestae.**

Where, upon trial of murder, the State was permitted to introduce in evidence the statements of defendant's wife, who was killed in the same transaction by defendant, to the effect that she called someone to come and help her; that she was dying, etc., and that she then asked the doctor who came to her, "How is the poor man?" (meaning deceased), and that she exclaimed when told that he was dying, "Poor man! Poor man! He lost his life trying to protect me," there was no error, as this was res gestae. Following Rainer v. State, 67 Texas Crim. Rep., 87, and other cases.

**6.—Same—Evidence—Declarations of Deceased—Hearsay.**

Upon trial of murder, it was reversible error to admit in evidence the declarations of the deceased just before he died to the effect that defendant's wife (who was also killed in the transaction by defendant) appealed to him for protection early in the evening and that she was there by his invitation so he could give her protection from defendant, her husband, who had threatened to kill her; as this testimony was in effect the hearsay evidence of defendant's wife, not made in the presence or hearing of defendant.

**7.—Same—Evidence—Declarations of Third Parties—Res Gestae—Dying Declarations.**

The declarations of third parties of what deceased said as to how the shooting occurred, and what was done and said by the parties at that time, was clearly admissible as res gestae and dying declarations.

**8.—Same—Evidence—Motive—Acts of Defendant.**

Upon trial of murder, there was no error in admitting in evidence the fact that shortly prior to the homicide, defendant had been indicted for an assault with intent to murder his wife and that the case was set for trial just four days before defendant killed deceased and defendant's wife, and also that defendant had cut up his wife which caused said prosecution for assault with intent to murder; to show motive, to prevent her from testifying.

**9.—Same—Evidence—Threats.**

Upon trial of murder, there was no error in admitting in evidence the declarations of defendant's wife as to threats of defendant made against her shortly before the killing and that she called on others to protect her, if defendant knew of this fact, and this could be shown by either direct or circumstantial evidence. Following Lagrone v. State, 61 Texas Crim. Rep., 170.

**10.—Same—Evidence—Threats—Declaration by Deceased.**

If defendant had notice of the fact, there was no error in admitting in evidence that the officer had been called on by defendant's wife to protect her against him.

**11.—Same—Evidence—Acts and Declarations of Defendant.**

The acts and declarations of defendant on the evening before the killing of deceased and defendant's wife, accusing her of staying with other men, were admissible in evidence.

Appeal from the District Court of Galveston. Tried below before the Hon. Robt. G. Street.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

*Marsene Johnson* and *Elmo Johnson* and *N. C. Walker* and *Roy Johnson,* for appellant.—On question of defendant's right to be tried under the old law: McCann v. State, 48 S. W. Rep., 512; Sandoloski v. State,

65 Texas Crim. Rep., 33, 143 S. W. Rep., 151; Kendall v. State, 55 Texas Crim. Rep., 139, 114 S. W. Rep., 833.

On question of admitting the declarations of defendant's wife: Brock v. State, 44 Texas Crim. Rep., 335.

On question of non res gestae statements: Pryse v. State, 54 Texas Crim. Rep., 523, 113 S. W. Rep., 938; Deneaner v. State, 58 Texas Crim. Rep., 624, 127 S. W. Rep., 201; Callihan v. State, 67 Texas Crim. Rep., 658, 150 S. W. Rep., 617; Lockhardt v. State, 53 Texas Crim. Rep., 589, 111 S. W. Rep., 1024; Pace v. State, 58 Texas Crim. Rep., 90, 124 S. W. Rep., 949; Miller v. State, 65 Texas Crim. Rep., 302, 144 S. W. Rep., 239; Bowman v. State, 70 Texas Crim. Rep., 22, 155 S. W. Rep., 939.

On question of admitting testimony as to prior assault by defendant on his wife and hearsay evidence: Johnson v. State, 66 Texas Crim. Rep., 586, 148 S. W. Rep., 328; DeLeon v. State, 68 Texas Crim. Rep., 625, 155 S. W. Rep., 248.

On question of insufficiency of evidence and murder in first degree: Ake v. State, 30 Texas, 466; Wheeler v. State, 54 Texas Crim. Rep., 47, 111 S. W. Rep., 1022.

*C. E. Lane,* Assistant Attorney General, for the State.—On question of res gestae statement: Cook v. State, 22 Texas Crim. App., 511; Lewis v. State, 29 id., 201; Castillo v. State, 31 Texas Crim. Rep., 145.

PRENDERGAST, PRESIDING JUDGE.—On November 2, 1911, appellant was indicted for the murder of I. T. Blake, alleged to have been committed in Fort Bend County on June 15, 1911. The venue was properly changed to Galveston County where this trial occurred in July, 1913. The proof showed that appellant killed the deceased by shooting him in the back with a pistol and that in the same transaction he shot his wife which resulted in her death. The jury found him guilty of murder with express malice,—in effect, murder in the first degree, and assessed the death penalty.

It is unnecessary in the disposition we make of the case to state the evidence. It was sufficient from the State's standpoint to show murder in the first degree. It also raised murder in the second degree and complete justifiable homicide, as appellant himself testified that he caught deceased in the act of adultery with his wife at the time of the killing, and perhaps manslaughter. All of these issues were submitted to the jury by the court.

At the time the case was tried the court, as well as the attorneys, it seems, believed the Indeterminate Sentence Act of April 3, 1913, p. 262, was valid. This Act, after this trial, was held void in Ex parte Marshall, 72 Texas Crim. Rep., 83, 161 S. W. Rep., 112. Being thus misled the court did not tell the jury what penalty was authorized to be assessed for either murder in the second degree or manslaughter. Of course,

this will not occur on another trial. There are other questions as to the validity of the charge in not expressly requiring the jury to find, in case they convicted of murder in either degree, of what degree they convicted appellant, and assess the penalty therefor in the event they did not assess it at death. As the crime was alleged to have been committed prior to the Act of April 3, 1913, amending our law on the subject of murder, articles 1140 and 1141, Penal Code, this case must be tried under the law of murder as it existed at the time of the alleged crime, so far as the crime of murder is concerned. Articles 15 to 19, Penal Code. But as the punishment for murder in the first degree is ameliorated, the new punishment must be charged, unless appellant himself elects otherwise as prescribed by law. However, he must be tried according to the new procedure law as amended and added to by the Act of April 5, 1913 (articles 735 to 743). With the corrections indicated above, the charge of the court on murder in the first and second degree, manslaughter and complete justifiable homicide are admirable charges and substantially submit every issue raised, correctly and in accordance with the evidence as the record before us shows it to be.

It is useless to discuss appellant's first bill to the argument of the district attorney as that matter doubtless will not occur on another trial.

It is our opinion that the statements of appellant's wife, Jane Robbins, to the effect that she called somebody to come and help her that she was dying, etc., and when the doctor did come to her she asked, "How was the poor man" (meaning deceased) and that she exclaimed when told, "Poor man, poor man, he lost his life trying to protect me!" shown by appellant's bills three and four of this record, are res gestae statements and were admissible as such. Rainer v. State, 67 Texas Crim. Rep., 87, 148 S. W. Rep., 735, and authorities there cited. They were the transaction,—the acts themselves, speaking, and although uttered by appellant's wife and testified to by other witnesses, being res gestae, they were admissible as such. This question has been clearly and definitely settled by this court. In Cook v. State, 22 Texas Crim. App., 511, this court said:

"With regard to the declarations of the wife, made during the progress of the difficulty, just preceding and subsequent to the shooting of Russell, they were admissible as verbal acts and were clearly parts of the res gestae, and consequently did not come within the rule announced in article 795 (735), Code of Criminal Procedure, which prohibits a husband and wife from testifying against each other in a criminal prosecution. . . .

"Mr. Wharton, in his work on Evidence, section 252, says: 'It is in any view clear that declarations which are the immediate accompaniments of an act are admissible as part of the res gestae.' Again, in section 263, he says that 'the wife's declarations, forming a part of the res gestae, are admissible against the husband.'

"This doctrine is maintained in civil cases at common law (Johnson v. Sherwine, 3 Gray, 374; Walton v. Green, 1 C. and P., 621; Gilchrist v. Bale, 8 Watts, 355; Aveson v. Lord Kinnaird, 6 East, 188; Thomp-

son and wife v. Freeman, 1 Skinner, 420). At common law, the rule which in civil cases excluded the husband and wife from testifying against each other was the same as that which is announced by our statutes with regard to criminal cases. There is no law of this State which governs or regulates the admission of declarations of the wife affecting the husband, when they constitute a part of the res gestae, and there being no specific rules prescribed by statute, other rules of the Code relegate us to the common law for the rules which are to govern. (Code Crim. Proc., arts. 26 (27) and 783 (725).

"We shall therefore adhere to the common law rule as expressed in the authorities above cited, and hold the declarations of the wife admissible against the husband as a part of the res gestae; for it is indispensable to a correct understanding of every transaction that every act attending it, verbal as well as physical, by whomsoever it may be committed, be placed before the court for its enlightenment. This rule as to res gestae overrides all other rules known to the law governing the admissibility of testimony."

The evidence of Dr. O'Farrel as to what the deceased told him when he first got to and examined the deceased and saw that he was fatally wounded to the effect that appellant's wife had appealed to him for protection early in the evening and that she was there by his invitation so he could give her protection from her husband, Mose Robbins, who had threatened to kill her, shown by appellant's bills five and six, should not have been admitted. This evidence was, in effect, giving the hearsay evidence of the appellant's wife, not in the presence or hearing of the appellant, and was not admissible. For the error in admitting this testimony, this judgment must be reversed.

The testimony of Dr. O'Farrel and other witnesses of what deceased said as to how the shooting occurred and what occurred and was done and said by the parties at that time, was clearly admissible, both as res gestae and as dying statements. Appellant made no objection to the introduction of that testimony.

The court did not err in permitting the State's witness Robert Blair to testify that appellant, shortly prior thereto, had been indicted in Matagorda County for an assault with intent to murder his wife and that that case was set for trial June 19, just four days before appellant killed deceased and wife. In addition to this witness' evidence on this subject, the State also proved by the copy of the proceedings in the case in Matagorda County, the same facts. All this was admissible,—the State's contention in this case being that appellant killed his wife to prevent her from testifying in said assault to murder case and the testimony tending to show that such was the case. So was the testimony of the same witness for the same reason that appellant had cut up his wife and that her face, breast and forehead showed the scars therefrom which were committed by appellant on her which occasioned the said indictment in Matagorda County against him.

Appellant also objected to the testimony of said witness Blair to what

appellant's wife said to him of the threats appellant made against her the evening shortly before the killing and she called on him for protection and that he advised her to go to Mr. Blake, the deceased, for protection against appellant. We are unable to tell for certain from the record whether what appellant's wife said to this witness, in substance shown above, was in the presence or hearing of the appellant or not. If he was present or it occurred in his hearing, or he knew thereof before the killing, such evidence would be admissible. On another trial this should be made more certain. If it did not occur in appellant's hearing or in his presence, or he did not know thereabouts before the killing, it would not be admissible against him. The State could show he knew or heard, etc., by circumstantial or direct evidence. LaGrone v. State, 61 Texas Crim. Rep., 170.

So, the testimony of the State's witness Bert Carr, the deputy sheriff of Matagorda County, that the year before this killing, while appellant and his wife lived in that county, he had been called upon eighteen or twenty times to protect her from her husband, appellant, would not be admissible, unless appellant knew of it at the time or it occurred in his presence. The record does not make it clear whether this occurred within appellant's knowledge or notice or not. Whatever times, if any, the officer was called upon to protect appellant's wife against him which were known to or occurred in appellant's presence was admissible, but if it did not occur in his presence or he did not know thereabouts, then it would not be admissible. The introduction or exclusion of this evidence, can be properly controlled on another trial.

Clearly the testimony of the State's witness, said Blair, to the effect that on the same evening, before the killing of deceased, he heard appellant curse his wife and accuse her of staying with other men, was admissible and pertinent in this case.

For the error above pointed out the judgment must be reversed and the cause remanded.

*Reversed and remanded.*

DAVIDSON, Judge.—I agree to the reversal of the judgment on questions as decided. There are other rulings which show error. I will not discuss them. They may not arise upon another trial, or if they do may come in different form.

I can not agree to the statement that murder in the first degree is in the case. As I understand the facts there is nothing more than manslaughter in most favorable aspect for the State, and justifiable homicide for appellant. Deceased had taken appellant's wife to his room, carried her trunk to the same room; it was at night; they had retired, one sleeping in part of the room and the other in another part of the room. Appellant went to the room and found them in bed together and killed both as his evidence shows. Dying declarations of deceased show he was going to the bed of appellant's wife to notify her that appellant was coming when appellant shot him. The mosquito bar over the bed

of appellant's wife had bullet holes in it. I do not care to elaborate. The judgment is properly reversed.