### W. R. Bradford v. The State.

No. 15393. Delivered November 23, 1932.
Reported in 54 S. W. (2d) 516.

The opinion states the case.

*P. Z. Sullivan,* of Bellville, for appellant.

*Fred L. Blundell,* Dist. Atty. of Lockhart, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense, murder; the punishment, death.

The killing is alleged to have taken place on or about the 20th day of June, 1931. The deceased was the appellant's sister. She was about 56 years of age and for some time had been in very feeble health. A short time before the homicide, she had been in the hospital for some time. The state's testimony showed that she was suffering from a disease which almost completely incapacitated her and required constant nursing and attendance. The deceased and her mother, who was also the mother of appellant, resided in the house together and the mother was very old and was very hard of hearing. For a long period of years prior to the killing, appellant had not visited or seen his sister. He came to deceased's house in the early part of the year 1931, and later on the wife of the appellant came also and they resided there in the house. It seems that the mother drew a pension and had saved up about $1,100, and about the time the deceased was to be removed from the sanitarium back home, the question arose as to the mother paying the hospital expenses thereof. It seems she consulted with appellant before it was done and he agreed to her paying $500 out of her money on the hospital expenses. The deceased was shot in the back of the head from the discharge of a shotgun, and her body was found lying by the side of the bed. There was also evidence to show that there had been a scuffle before the killing.

It was appellant's defense that the shooting was an accident, and the effect of his testimony was that the deceased had become angry at the appellant and his wife and claimed that they were using some of her quilts, and she remonstrated with them and told them not to use them any more. That appellant agreed that he would not use them any more. He further testified that deceased called the appellant to her bed, and when he came there the deceased had a shotgun lying on the bed with her and told him that she was going to kill him, and he immediately grabbed the gun to take it away from her, and in the scuffle which resulted and in his endeavor to get hold of the gun and in dragging it out from the foot of the bed it was accidentally discharged. That immediately afterwards he fled and his mind was in such a state or condition that he knew nothing about his acts or conduct thereafter.

Rebuttal testimony on the part of the state tended to show that deceased was so sick that she was physically unable to handle a gun of that size.

By bill of exception complaint is made as to the receipt in evidence of the testimony of the witness Dora Kaechele, who

testified as to hearing the wife of the appellant over the telephone make the statement to the effect that the appellant had killed the deceased. The bill of exception presented by appellant's counsel was refused and the court prepared his bill of exception.

Another bill of exception went to the receipt in evidence of testimony of the witness Hoffman Reese, who arrived, according to the state's contention, soon after the killing and heard the appellant's wife make some statement with reference to appellant's connection therewith. This bill of exception on the part of appellant's counsel was refused and the trial court filed his bill, which appears in the record as bill of exception No. 10a. By this bill of exception, we find that the trial court certified to the fact that the witness was permitted to testify to what the wife told him as part of the res gestae. It appears from the facts set out in said bill of exception that a state's witness, Ernest Blum, testified that he knew defendant's wife and that the appellant's wife did not come with the appellant at the time he came to his sister's home but came some time later; that he had been to the home of deceased while she was in bed after she returned from the hospital and he saw the appellant's wife waiting on the deceased; and that she was then present at court. He further testified that they went to the home of deceased immediately after the killing and the appellant's wife was there. It is further shown by said bill of exception that the witness Dora Kaechele, a witness for the state, testified, before the question and answer complained of was asked and answered by the witness Reese, to the effect that she lived at Kinney and she lived there on June 20, 1931, and at that time was a telephone operator; that she knew the deceased during her lifetime and knew about where her place was; that she had a telephone in her house connected with her exchange and she had talked to and heard the voice of appellant's wife over the telephone before the killing of deceased; that at the time of the killing of the deceased, she received a telephone call from the home of the deceased; and that call was from Mrs. Bradford, the wife of the defendant, and at the time she received the telephone call from appellant's wife she was very nervous and talked like she was crying and was excited. Appellant's wife wanted an officer and a doctor and she called several times, one call right after the other; that she called three or four times within a period of 10 or 15 minutes, and each time she was asking for help and she wanted the sheriff and a doctor; that at each of the times she called she

was in the same condition of excitement and nervousness and was crying. That she communicated with some one at Brenham and she wanted Mr. Hoffman Reese at Brenham and a little bit later the witness had a call for an undertaker at Brenham; that it was about 15 minutes from the time appellant's wife talked to Brenham until she received the call from the Dodd home for the undertaker.

The witness Dr. W. F. Hasskarl testified, before the question and answer complained of in the bill was put and answered by the witness Reese, to the effect that he learned of the killing from Hoffman Reese, who informed him of the killing and asked him to go with him and he accompanied him to the home of the deceased at his request; that they traveled by automobile at the rate of about 55 miles per hour, and it was about 10 miles from Brenham to the deceased's house; that the deceased's house was about two miles from the paved road and they started immediately after being notified; that it was perhaps 20 minutes from the time they learned of the killing until they arrived at the house where the body of the deceased was found. When they drove up, the wife of the appellant came out of the house and met them between the house and gate, and she was very excited and was wringing her hands, and from his investigation of the body and conditions he saw there he would say that the body had been shot and killed about half an hour before they arrived. On cross-examination, he testified that he hardly thought that the deceased could have been dead an hour when they arrived and he based his opinion on the condition of the tissue and the blood.

The bill further shows that the sheriff, Hoffman Reese, testified before the question and answer complained was asked and answered by him to the effect that at the time he learned of the death of Mrs. Dodd he was at his office in Brenham and it was about 10 miles from Brenham to Mrs. Dodd's and she lived two and a quarter miles off the pavement. It was a total distance of about 10 miles to her house and there was a concrete highway within about two and a quarter miles of her place, and he received the information shortly after the shooting and was requested to bring a doctor with him; that after he received the message he phoned Dr. Hasskarl and picked him up on his way out; that after picking the doctor up he drove by his home and got his rifle and went right on about as fast as the car would go. Only he and the doctor were in the car, and as he got to the house he saw Mrs. Bradford, appellant's wife, and she met them at the gate. As to her condition,

she seemed very excited and seemed very much aroused. She made some statement to them at the time and the appellant was not there when they arrived. After the foregoing testimony had been given by the aforesaid witnesses, the bill shows that the following question was asked of the witness Reese: "What, if any, did she, Mrs. Bradford, say to you as you met her there in that condition?" And the witness answered that the first thing she said was, "Reese has killed May," and the appellant's counsel objected to the testimony as an attempt upon the part of the state to offer the wife as a witness against her husband and in derogation of the rights of the defendant under the Constitution and laws of this state and is calculated to prejudice and inflame the minds of the jurors against this defendant and is not admissible for any purpose, whereupon the district attorney stated that he offered it as part of the res gestae and as part of the transaction, and the court then stated that it was admitted as part of the res gestae, and the appellant's attorney stated that there was no testimony that would justify its admission on the grounds of res gestae. The bill further shows that the witness then stated that appellant's wife had said "that she heard a noise and went to the door and saw him throw a glass at her and then throw a bell at her and beat her with a stick, choke her, and hit her with his fist, and she ran out in the yard to holler for help and came back to the steps and heard a gun fired and saw Reese going out of the house with a gun in his hand."

It is well established in this state that the declarations or statements of the wife are properly admissible against her husband when coming under the rule of res gestae. See Holman v. State, 92 Texas Crim. Rep., 364, 243 S. W., 1093; Gilmore v. State, 91 Texas Crim. Rep., 31, 241 S. W., 492. We quote from the opinion of Judge Hawkins in Johnson v. State, 95 Texas Crim. Rep., 269: "While the wife may not be called by the state as a witness in the prosecution of her husband for killing another, yet statements made by her become admissible when shown by other witnesses if res gestae. As said by Judge Morrow in Bibb v. State, 83 Texas Crim. Rep., 616, 205 S. W., 135: 'It is not her testimony that is used, but her verbal act so connected with the transaction as to become a part of it, and provable by competent witnesses like any other part of the transaction. See Robbins v. State, 73 Texas Crim. Rep., 367, 166 S. W., 528; Cook v. State, 22 Texas App., 511, 3 S. W., 749; Wharton's Crim. Ev., Secs. 262, 263.' * * * We quote from Sec. 262, Wharton's Crim. Evidence: 'So long as the transaction con-

tinues, so long do acts and deeds emanating from it become part of it, so that in describing it in a court of justice they can be detailed. The distinguishing question is, Is the evidence offered that of the event speaking through the participants? If so, what was thus said can be introduced without calling those who said it. Is the evidence offered that of observers speaking about the event? If so, such observers must be called to testify. Nor are there any limits of time within which the res gestae can be arbitrarily confined. They vary in fact with each particular case.' "

We further quote from said opinion: " 'They need not be coincident as to time if they are joined by the existing feeling which exists without break or let-down, from the moment of the event they elicit. If the acts and declarations appear to spring out of the transaction, if they elucidate it, if they are voluntary and spontaneous, and if they are made at a time so near it as reasonably to preclude the idea of deliberate design, then they are to be regarded as contemporaneous, and are admissible.'

"The foregoing statement from Branch's Ann. P. C., Sec. 83, p. 53, epitomizes the rule, and is in consonance with Wharton, supra, and is supported by the many cases collated, notably McGee v. State, 31 Texas Crim. Rep., 74, 19 S. W., 764; Bronson v. State, 59 Texas Crim. Rep., 17, 127 S. W., 177; Lewis v. State, 29 Texas Crim. Rep., 204, 15 S. W., 642; Craig v. State, 30 Texas Crim. Rep., 621, 18 S. W., 297."

It will be seen from the foregoing authorities that no inflexible rule as to the length of the interval between the act charged against the accused and the act of declaration can be formulated. In that matter the facts of each case stand alone and must speak for themselves. In each case, the particular facts and instances must be considered as an independent group and it must be determined whether they fall within or without the operation of the rule. As to the statement made by the appellant's wife over the telephone to Mrs. Dora Kaechele, which was objected to, to the effect that the appellant's wife at the time she telephoned made the statement that "Reese has shot May," even if erroneously admitted, could not have injuriously affected appellant under the facts shown by the record, he having himself testified that he accidentally shot the deceased.

But as to the detailed statement made by appellant's wife to the officer and the doctor when they arrived at the house of the deceased a much more serious question is presented. The only fact that could be considered as establishing a predicate for the introduction of this testimony was that she seemed to

be excited and was rubbing or wringing her hands. So far as the evidence is concerned no one knows the exact period of time that had elapsed between the shooting and the time the wife was heard to make the statement over the telephone, nor of the time definitely fixed as to the statements made to the officer and doctor when they arrived at the house; but it is shown that at least 30 minutes after the shooting had elapsed previous to the making of said statement. She had previously telephoned three or four times for an officer and a doctor. What had been her conduct from the time she had telephoned and the arrival of the officer and the doctor is not shown. While the time alone would not be sufficient to justify the exclusion of the statement claimed to be res gestae, the other facts and circumstances must be taken into consideration. It is shown by the record that the witness Ernest Blum had gone to the house where the killing took place immediately after the killing and the appellant's wife was there. It is not shown that she made any statement whatever to said witness about how it occurred, but waited until the officer arrived before making said statement. There is no testimony showing that the statement made to the sheriff was of that spontaneous character which would lead to the belief that it was the event speaking through the wife and not the wife talking about some past event. The declaration complained of was made after all action on the part of the appellant, actual or constructive, had ceased and after he had departed from the scene. To make admissible any statement or act occurring after the transaction has ended, it must be shown that the person speaking or acting was so affected by the transaction as to render likely the spontaneity of the utterance or act offered and to exclude the idea that the same was a mere narration of past events. Holman v. State, 92 Texas Crim. Rep., 364, 243 S. W., 1093.

If an act or statement was disconnected with the main transaction and was merely a narrative of what occurred, it is obviously inadmissible as part of the transaction, regardless of the time that intervened between the act or declaration and the principal fact. Wright v. State, 114 Texas Crim. Rep., 597, 26 S. W. (2d) 236. As we view the record, the evidence was insufficient to establish a predicate for the admission of the statement by appellant's wife to the sheriff as res gestae. That he shot the deceased was admitted by the appellant, but he contended that it was an accident. That the statement of the wife to the officer admitted in evidence was hurtful to appellant is manifest. The extreme penalty was assessed by the jury. The

statement of the wife to the officer was direct evidence as to what occurred between the appellant and deceased at the time of the killing, and in direct contradiction of appellant's testimony.

Appellant also complains of the argument of the district attorney in his closing argument to the jury. As the case must be reversed for the error above pointed out, we deem it unnecessary to discuss said bills in detail, as the matters therein complained of are not likely to occur on another trial of this case.

For the error in permitting the introduction of the statement of the wife of appellant to the sheriff, over the objection of appellant, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.