Dewey Buren **DAVIDSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 37581.

Court of Criminal Appeals of Texas.

Jan. 27, 1965.

Bob Tarrant, Houston, M. Gabriel Nahas, Jr. (On Appeal Only), Houston, King C. Haynie (On Appeal Only), Houston, for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally, W. Louis White and Thomas C. Dunn, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Presiding Judge.

The offense is murder; the punishment, confinement in the state penitentiary for life.

The state adduced testimony from the deceased's wife, Mrs. Linda Virginia Willis, who testified that on August 17, 1963, at approximately 6:30 p. m. o'clock, she and her husband (the deceased), and their two infant children, went to the appellant's home located in Harris County, Texas. The appellant was the deceased's stepfather, being married to the deceased's mother, Dorothy Davidson. The appellant was not at home at the time the deceased and his family arrived.

Sometime after 9:00 p. m., appellant's wife left her home going in the deceased's car with him, his wife, and the two infant children to the Stingaree Lounge. The deceased and the group with him remained a few minutes and then returned to the appellant's home just a little before appellant arrived.

The deceased let his mother out of the car and then got out himself. There was a brief conversation between the mother and son near the side of deceased's car, and then the appellant's wife went inside the house. Immediately thereafter, she and appellant came out of the house. The appellant had a .22 rifle in his hands. He and his wife began arguing. The deceased's wife testified she saw the appellant hit his wife across the back and hips with the butt of the gun and say, "If you don't move, I will kill you too". The couple continued struggling with the gun. Appellant knocked his wife down and started to the fence, which was between him and the deceased. Meanwhile, appellant's wife had gained her footing and had again reached him. Again, they struggled over the gun, but appellant shook her off.

During these struggles between the appellant and his wife, the deceased was standing beside his car, outside the fence which was around the appellant's house. As the appellant and his wife were struggling, the deceased said "Beau, (this is the name with which the deceased referred to the appellant) what is the matter? Beau, have you gone crazy?" Mrs. Willis further testified that her husband was unarmed.

The appellant finally got free of his wife and again started toward the fence (this, also, was in the direction of the deceased) and said, "You lying son-of-a-bitch". Immediately after saying this, the appellant pointed the rifle at the deceased and commenced firing. After about three shots had been fired, the deceased told his wife to get the kids out of the way, that they might get hurt. The deceased's wife drove the car off and heard more shots being fired as she left. She came back shortly and found the deceased shot, lying on the street in front of appellant's house. The wife of the deceased did not see the appellant any more that night from the time she left when the shooting was taking place.

Three nearby neighbors of the appellant testified on behalf of the State. One neighbor testified that she heard the appellant's wife scream to him, "Beau, don't kill him please". Two of the neighbors heard the deceased say, "Beau, don't shoot any more. You have shot me once. You might hit the kids". Also, two of the neighbors heard the appellant say shortly after the shooting, "Well, I hope I killed the son-of-a-bitch."

Two neighbors testified that immediately after the deceased was shot, the appellant's wife ran to the deceased, picked him up in her arms and said, "My husband has shot my son".

Dr. Joseph A. Jachimczyk, Chief Medical Examiner of Harris County, testified that the deceased had six gunshot wounds in his body, and that death was caused from two of these gunshot wounds in the abdomen. These produced a hemorrhage in the abdomen, known as hemaperitoneum.

The appellant called seven witnesses who testified (including the appellant's wife) that at various times shortly before the killing the deceased had made threats to harm the appellant. Each of these witnesses, except one, testified they had communicated the threats to the appellant before the time of the shooting. These witnesses testified

that the deceased was looking for the appellant to collect a debt, and that he was going to collect one way or another.

The wife of the appellant testified in his behalf. Her testimony on direct examination covered the period of time from arrival of the deceased and his family, to the time of the shooting, and shortly thereafter. She testified that when she came back home and got out of the car, the deceased was determined to settle the debt. At that time, at the car, she noticed a gun in the hands of her son, the deceased. She went in and saw her husband. She testified deceased called him to come out and settle the matter, and as the appellant started out he picked up his .22 rifle. The wife testified that she stepped in between the deceased and the appellant to keep the deceased from shooting the appellant, and that she struggled to get the rifle away from her husband. She testified that during this struggle, the rifle went off several times, and that at times her finger was on the trigger. She further related that at this time she was struck by appellant with the gun butt, because she felt he was afraid of her and wanted to keep the gun from her.

On cross-examination, the appellant's wife was confronted with a written statement in affidavit form made the night of the shooting, which was materially different from her testimony. This statement was later admitted into evidence.

Appellant's testimony in his own behalf was very similar to that of his wife.

The trial court fully instructed the jury upon the law of self-defense, accident, and threats, in his charge to the jury. No objections nor exceptions were taken to the court's charge. There are no formal bills of exception.

We find nothing in the motion for new trial which merits our attention. The motion was overruled by operation of law.

■ The jury did not see fit to adopt any of appellant's defensive issues but resolved the facts against him, and by their verdict, evidenced their adoption of the version of the transaction from the state's viewpoint. We find the evidence abundantly sufficient to support their verdict.

Appellant urges four contentions as error, all of which are brought forward by informal bills of exception.

■ The first one complains of the admission in evidence of the testimony of one of appellant's neighbors, Curtis L. Hamilton. Mr. Hamilton testified that he saw the shooting occur from his driveway, which was 150 feet away. He stated that he immediately went to the deceased and that appellant's wife arrived at the side of her son (the deceased) about the same time that he did. The witness then testified (this portion of his testimony being the portion to which appellant levelled his objection) that appellant's wife said, "My husband has shot my son." The witness' testimony reflects that he arrived at the scene where the deceased was lying, not more than one minute after the last shot was fired. He stated that appellant's wife was upset. Appellant's objection was that the statement was hearsay and that it allowed the state to use appellant's wife as a witness against him.

24 Tex.Jur.2d, p. 179, Sec. 616, states:

"Declarations or admissions of third parties are properly admitted when they are part of the res gestae."

It is stated in 24 Tex.Jur.2d, p. 124, Sec. 593:

"Mere fact that utterance or act was that of wife of accused does not in itself render evidence inadmissible under res gestae rule." Citing: Cook v. State, 22 Tex.Cr.R. 511, 3 S.W. 749; Holman v. State, 92 Tex.Cr.R. 364, 243 S.W. 1093; Davis v. State, 96 Tex.Cr.R. 367, 257 S.W. 1099; Bradford v. State, 122 Tex.Cr.R. 191, 54 S.W.2d 516.

■ We express the further view that the declaration of the mother of the de-

ceased was made under circumstances sufficient to raise a reasonable presumption that it was spontaneously uttered by her in the tense moment of witnessing her son writhing in agony from the bullet wounds, and so soon thereafter as to exclude the idea that the statement resulted from premeditation and design. We think it reasonable to conclude that the mother was here in the same category as an injured party who made an exclamation or expression of present pain and suffering. Such exclamations are admissible as an exception to the hearsay rule and as part of the res gestae. Assuming for the sake of argument that the statement was not admissible as an exception to the hearsay rule or as part of the res gestae, we find that this same testimony was adduced from the neighbor, Mrs. Myrtle Clark, and was admitted without objection. The admission of improper evidence does not constitute reversible error if the same facts were proved by evidence which was not objected to. McCaine v. State, Tex.Cr.App., 211 S.W.2d 190; Davis v. State, 168 Tex. Cr.R. 588, 330 S.W.2d 443.

Appellant next complains of the admission in evidence of the testimony of the witness, Mrs. Myrtle Clark, because she had been present in the courtroom when another witness, Mr. Curtis L. Hamilton, was testifying.

■■ It appears from the statement of facts that the witness Clark was in the courtroom. She testified on voir dire examination that she heard a portion of Hamilton's testimony. It has long been the rule that the ruling of the trial court on an objection to a witness' testifying when he has remained in the courtroom, after having been placed under the rule, may not be relied upon as ground for reversal unless an abuse of discretion is shown; and until the contrary has been made to appear, it will be presumed on appeal that discretion was properly exercised. Hammond v. State, 121 Tex.Cr.R. 596, 49 S.W.2d 779; Root v. State, 169 Tex.Cr.R. 382, 334 S.W.2d 154. No evidence was offered to show that the

trial court abused its discretion in this regard. Fite v. State, 163 Tex.Cr.R. 279, 290 S.W.2d 897. The statement of facts indicate the testimony of Mrs. Clark can be distinguished from that of Mr. Hamilton, in that what she observed and testified about was seen from a different geographical location from that of Mr. Hamilton. The only matters which coincide with the testimony of both witnesses are matters which are not in dispute and which do not harm the appellant. Hammond v. State, supra.

■ Appellant next complains that the testimony of the witness Cleboski about seeing some bruises on appellant's wife was not admissible and tended to prejudice the appellant before the jury. It is undisputed that appellant hit his wife with the rifle. He testified to that himself. The nature and extent of the injuries to the wife were part of the transaction and were admissible as res gestae. Root v. State, 169 Tex.Cr.R. 382, 334 S.W.2d 154; Boyle v. State, 158 Tex.Cr.R. 468, 256 S.W.2d 574.

■ Lastly, appellant complains of the admission in evidence of the affidavit of appellant's wife. His complaint is best answered by quoting from the opinion of this Court in Roberts v. State, 74 Tex.Cr.R. 150, 168 S.W. 100. On page 113 it is stated:

"From the statute and the decisions of this court and the Supreme Court, there can be no question but that the rule is that when the husband who is on trial introduces his wife to testify in his behalf, and she does so, that she is subject to cross-examination and impeachment just like any other witness, save and except that new incriminating evidence cannot be brought out from her against the accused, nor can wholly immaterial matter be brought out for impeachment of her any more than it can be from any other witness." Dollinger v. State, 156 Tex.Cr.R. 397, 242 S.W.2d 891.

■ Appellant's wife could be impeached by contradictory statements as to

material matters developed on her direct examination. Hicks v. State, 97 Tex.Cr.R. 373, 261 S.W. 579; Escobar v. State, 121 Tex.Cr.R. 303, 51 S.W.2d 346. The former contradictory statements made by a witness in writing are admissible to impeach him. Mitchell v. State, 156 Tex.Cr.R. 128, 239 S.W.2d 384.

Finding no reversible error, the judgment is affirmed.