TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00319-CR






Gus Lee Brite, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274TH JUDICIAL DISTRICT


NO. 2001-189, HONORABLE ROBERT T. PFEUFFER, JUDGE PRESIDING







 Appellant Gus Lee Brite appeals his convictions for aggravated assault and
aggravated kidnapping. Tex. Pen. Code Ann. § 22.02(a)(2) (West 1994), § 20.04(a)(4), (5) (West
Supp. 2003). The jury found appellant guilty of both offenses. At the penalty stage of the trial, the
trial court found appellant had been twice previously convicted of felonies as alleged in the
indictment, and assessed punishment at thirty years' imprisonment for aggravated assault and thirty
years' imprisonment for aggravated kidnapping.


Points of Error

 Appellant advances two points of error. First, appellant contends that the "trial court
erred in allowing the introduction of evidence based on the victim's testimony of an event that did
not occur." Second, appellant urges that the "trial court erred in allowing hearsay testimony of a
witness based on excited utterance under Section 803(2) of the Texas Rules of Evidence."

Background

 The record reflects that on August 18, 2001, R.G., the thirty-four-year-old
complainant, had been living with appellant for about eight months in Dale, Caldwell County. On
the early evening of August 18th, Herta Marie White, her fifteen-year-old daughter, Coco, and the
complainant were on the front porch of the house where the complainant lived with appellant. White
had purchased some beer and cigarettes for the complainant. When appellant came home, he found
the beer in the refrigerator. To protect the complainant, White claimed the beer was hers. Appellant
gave the beer to White and told her and her daughter to leave and take the "bitch" (complainant) with
them. When the three got to White's vehicle, appellant grabbed the complainant, hit her in the head
near an ear, and began dragging or pulling her into the house. White drove to the nearby store and
called the Caldwell County Sheriff's Office. 

 James Stuart was the first deputy sheriff on the scene. He encountered appellant
outside the house. Appellant told Stuart that the argument had been with his girlfriend who had left
the premises and that no one was in the house. Suddenly, the complainant ran out of the house and
toward Stuart's patrol car. She tried to keep the officer between her and appellant. Stuart described
the complainant as crying, trembling, and "visibly upset." She told Stuart appellant had hit and
assaulted her. Stuart saw that her left ear was cut and bleeding. Other officers arrived, and Stuart
turned his attention to appellant.

 Deputy Chris McMahan testified that the complainant was hysterical at the scene
when he arrived. She kept saying "I can't go back" and "He's going to kill me." She complained
of pain in all areas of her body. The complainant told McMahan that appellant had knocked her
down, tied her hands and feet behind her with an extension cord of a vacuum cleaner, gagged her
with a white cloth or rag so hard she bled, hit her in the face and forehead with his fist, and beat her
on her back and buttocks with a broken table leg. Deputy David Brent also heard the complainant
making similar remarks at the time about the assault.

 The complainant was taken to the police station where Deputy Pamela Stehling took
a written statement from her about the assault. She told Stehling much of what she had told
McMahan and added that appellant had also choked her. Stehling described the complainant as very
upset, crying, and complaining of pain. Several breaks had to be taken to allow the complainant to
regain her composure. Stehling took photographs of the complainant's body and described her
buttocks as "literally black and blue."

 Herta Marie White drove the complainant from the police station to White's home. 
On the way, White described the complainant as crying, shaking, and "in the grips of an emotional
event." At this point, approximately three hours after the assault and kidnapping, the complainant
told White and White's daughter, Coco, what appellant had done to her. Her description was similar
to what she had earlier told McMahan and Stehling.

 The complainant was actually the State's first witness. She testified that she had filed
a non-prosecution affidavit, that she did not "want to go through--I don't want to talk about this
anymore. I just--I want to plead the Fifth." In the absence of the jury, the prosecutor offered the
complainant both transactional and use immunity with the trial court's approval. The trial court
explained to the complainant that the State was a party to the case and that it was not her choice as
to whether the prosecution continued.

 In the jury's presence, the complainant testified that she was five months pregnant
with appellant's child, that she had frequently visited appellant in jail and still associated with
appellant's family in Dale, where she continued to live. She identified the photographs taken by
Deputy Stehling and those taken by her parents the next day as accurately reflecting her bruises and
injuries. However, the complainant testified that her horse had "bucked her off" and that she had
fallen over a vacuum cleaner causing the injuries she suffered. The complainant denied that
appellant committed the acts charged. She further related that all the statements she had made to the
officers were lies; that appellant had never beaten her. She attributed her lies to the fact that she was
"mad" or "angry" at appellant because, earlier on August 18, 2001, she had seen appellant flirting
or "heydaying" with another woman.


First Point of Error

 Appellant initially contends that the "trial court erred in allowing the introduction of
evidence based on the victim's testimony of an event that did not occur." As worded, it is difficult
to follow the thrust of appellant's contention. Appellant refers to the complainant as the "victim"
and to evidence based on her trial testimony. He does not identify the evidence to which he refers. 
Apparently, appellant is contending that, subsequent to the complainant's testimony that the offenses
did not occur and her recantation of the earlier out-of- court statements, all evidence about the
alleged offenses were improperly permitted. If this is appellant's argument, he did not make a trial
objection on that basis in order to preserve error on appeal. See Tex. R. App. P. 33.1; Purtell v.
State, 761 S.W.2d 360, 368 (Tex. Crim. App. 1988).

 In his brief, appellant cites no authority and presents no argument to support his first
contention, even if it had been preserved. "The brief must contain a clear and concise argument for
the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P.
38.1(h). Under "statement of facts," appellant's brief makes record references to the complainant's
recantation, the grant of immunity, some remarks of the trial court and the prosecutor, and some
objections made based on hearsay, relevancy, etc. No effort is made to pull these matters together
to support appellant's contention on appeal. A complaint on appeal must correspond to the trial
objection. See Sterling v. State, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990). A trial objection or
motion stating one legal basis may not be used on appeal to support a different legal theory. See
Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990); Shelvin v. State, 884 S.W.2d 874, 877
(Tex. App.--Austin 1994, pet. ref'd). Appellant has presented nothing for review.

 Appellant has not challenged either the legal or factual sufficiency of the evidence
to support the two convictions. Moreover, just because a complainant recants incriminating
testimony, it does not mean the evidence is insufficient. See Chambers v. State, 805 S.W.2d 459,
461 (Tex. Crim. App. 1991); Maldonado v. State, 887 S.W.2d 508, 509 (Tex. App.--San Antonio
1994, no pet.). The prosecution has a right to prove its case in any way it may see fit in accordance
with the law, rules, and regulations. A defendant cannot direct either the method or manner of proof. 
Shelvin, 884 S.W.2d at 877. The first point of error is overruled. 


The Second Point of Error

 Appellant further contends that the "trial court erred in allowing the hearsay testimony
of a witness based on excited utterances under Section 803(2) of the Texas Rules of Evidence." An
excited utterance is not excluded by the hearsay rule regardless of the declarant's availability, and
is defined as "[a] statement relating to a startling event or condition made while the declarant was
under the stress of excitement caused by the event or condition." Tex. R. Evid. 803(2). The theory
of the excited utterance exception is that circumstances may produce a condition of excitement that
temporarily stills the capacity for reflection and produces utterances free of conscious fabrication. 
See 2 Steven Goode et al., Texas Practice: Guide to the Texas Rules of Evidence: Civil and Criminal
§ 803.2 (2d ed. 1993).

 Appellant's contention relates to the testimony of Herta Marie White, describing what
the complainant told her regarding appellant's conduct that evening. This conversation occurred
some three hours after the event in question while White was taking the complainant from the police
station to the White home. White described the complainant as crying, shaking, and still upset.

 We need not decide whether the trial court erred in overruling appellant's objection
to White's testimony under Rule 803(2). The improper admission of evidence is not reversible error
when the same facts are introduced by other unobjected-to testimony, either by the State or defense,
and either before or after the complained-of ruling. See Leday v. State, 983 S.W.2d 713, 718 (Tex.
Crim. App. 1998); Ybarra v. State, 890 S.W.2d 98, 114-15 (Tex. App.--San Antonio 1994, pet.
ref'd). Coco White, Herta's daughter, was in the vehicle with her mother and the complainant when
the statements were made. She later testified to essentially the same facts as her mother without
objection. Moreover, the same facts were earlier elicited from Deputy McMahan and in part from
Deputies Stuart and Stehling all without objection. See Davidson v. State, 386 S.W.2d 144, 148
(Tex. Crim. App. 1965); McCaine v. State, 211 S.W.2d 190, 193 (Tex. Crim. App. 1948). Still
further, a specific objection must be made each time an offer of inadmissible evidence is made in
order to preserve any error for reversal. See Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim.
App. 1991); Hudson v. State, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984); Miranda v. State, 813
S.W.2d 724, 739 (Tex. App.--San Antonio 1991, pet. ref'd). And it must be remembered that
unobjected-to hearsay has probative value as substantive evidence and may be assessed and weighed
by the jury with other evidence admitted at trial. See Peters v. State, 997 S.W.2d 377, 382-831 (Tex.
App.--Beaumont 1999, no pet.) (citing Fernandez v. State, 805 S.W.2d 451, 455 n.3 (Tex. Crim.
App. 1991)); see also Chambers v. State, 711 S.W.2d 246, 247 (Tex. Crim. App. 1986). Appellant's
second point of error is overruled.

 The judgment is affirmed.



 __________________________________________

 John F. Onion, Jr., Justice

Before Justices Kidd, B. A. Smith and Onion*

Affirmed

Filed: December 19, 2002

Do Not Publish





* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).